### PATTERSON et al. v. JONES.

### No. 10536.

Circuit Court of Appeals, Ninth Circuit.

June 22, 1944.

va M. Graney, Atty., Dept. of Justice, of Washington, D. C., Noel K. Wennblom, U. S. Atty., of Anchorage, Alaska, and J. Charles Dennis, U.S. Atty., of Seattle, Wash. (Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., of counsel) for appellants.

George B. Grigsby, of Anchorage, Alaska, for appellant.

Before STEPHENS and HEALY, Circuit Judges, and FEE, District Judge.

STEPHENS, Circuit Judge.

This is an appeal from a judgment releasing from custody the petitioner in a proceeding upon the writ of habeas corpus. The case is here on the following statement taken from appellants' opening brief which adequately states the facts and explains the controversy. A phase of this case was here before, Patterson v. Jones, 9 Cir., 141 F.2d 319. We adhere to our conclusions expressed in our former opinion which need not be restated in this opinion.

"October 17, 1942, appellee filed a petition for a writ of habeas corpus in the District Court of the United States for the Territory of Alaska, Third Division, alleging that he was illegally restrained from his liberty under a judgment sentencing him to imprisonment for six months, entered against him on October 15, 1942, in the United States Commissioner's Court of the Precinct of Anchorage, Alaska, Third Division; that the judgment was based upon his conviction for the crime of maintaining a gambling place contrary to Section 3, Chapter 56, of the Session Laws of Alaska, 1919;[1] and that that statute is void as having been passed by the legislature of the Territory of Alaska in violation of Section 9 of the 1912 Organic Act of Alaska.[2] A writ of habeas corpus issued

Tom C. Clark, Asst. Atty. Gen., and Mel-

---

[1] Section 3, Chapter 56, of the Session Laws of Alaska, 1919 (Sec. 4985, Compiled Laws of Alaska, 1933), reads: "All houses, boats, boat-houses, buildings, rooms, and places of every description where gaming or gambling is carried on, or where any banking or other game is played with cards, dice, or any other device, whether the same be played for money, or for any checks, chips, credit, representing money, or other representative of value, or where persons are permitted to resort for the purpose of gaming or gambling, and all implements or property used and kept in maintaining such places, are hereby declared to be common nuisances, and every person who maintains, aids or abets, or is in any manner associated in maintaining such place, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00) or by imprisonment in the Federal Jail for not less than thirty (30) days nor more than six (6) months, or by both such fine and imprisonment, for each offense."

[2] Section 9 of the 1912 Organic Act of Alaska (Act of August 24, 1912, c. 387, sec. 9, 37 Stat. 512, 514, 515, 48 U.S.C.A.

and appellants filed a return thereto which simply recited that appellee had been confined under the judgment of the United States Commissioner's Court from October 15 to October 17, 1942, having on the latter date been released on bail pending a hearing on the writ of habeas corpus. Appellee filed a demurrer to the return, and a hearing thereon was held October 27, 1942.

"The district court subsequently sustained the demurrer and filed findings of fact and conclusions of law in which it concluded that ' * * * the portion of Section 4985 of the Compiled Laws of Alaska, 1933 [Sec. 3, c. 56, Session Laws of Alaska, 1919], providing for punishment by imprisonment for the offense defined therein, is void as far as the Judgment in this case is concerned as being in conflict with that provision of Section 9 of the Organic Act of Alaska, which reads as follows: "Nor shall the legislature or any municipality interfere with or attempt in any wise to limit the Acts of Congress to prevent and punish gambling * * *."' Although the court did not so specify, this conclusion rests upon the determination that Section 3, Chapter 56, Session Laws of Alaska, 1919, a penal gambling statute passed by the Alaskan legislature in 1919, interferes with or attempts to limit Section 152 of the Criminal Code for the Territory of Alaska,[3] a penal gambling statute enacted by Congress in 1899 and continued in force under the 1912 Organic Act of Alaska.

"Judgment exonerating appellee's bail and discharging him from custody was entered on November 5, 1942, and the United States Attorney was allowed an exception to the ruling.

"Since a sentence of six months' imprisonment is authorized by Section 3, Chapter 56, Session Laws of Alaska, 1919, but not by Section 152 of the Alaskan Criminal Code, the validity of appellee's further detention under the judgment rendered against him in the United States Commissioner's Court at Anchorage, Alaska, depends upon the validity of Section 3, Chapter 56, Session Laws of Alaska, 1919. The case therefore presents the single question whether that statute is void as interfering with or attempting to limit Section 152 of the Alaskan Criminal Code."

It is our opinion that the discharge from custody was erroneous.

The congressional stricture (see note 2) upon the legislative bodies of the Territory of Alaska and its municipalities that they should not "interfere with or attempt in any wise to limit the Acts of Congress to prevent and punish gambling * * *," does not bar such bodies from legislating in regard to the subject matter of gambling. It does, however, bar the territorial legislature from enacting laws that would in any manner run counter to the spirit and effect of the congressional enactments against the evil of gambling. Although the two acts are not exactly parallel, from a practical standpoint they run in the same direction, and the charge here in all probability could have been laid under either act.

---

§ 77) provides in part as follows: "The legislative power of the Territory of Alaska shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States, * * *; nor shall the legislature or any municipality interfere with or attempt in any wise to limit the Acts of Congress to prevent and punish gambling, and all gambling implements shall be seized by the United States marshal or any of his deputies, or any constable or police officer, and destroyed; * * * and all laws passed, or attempted to be passed, by such legislature in said Territory inconsistent with the provisions of this section * * * shall be null and void. * * *"

[3] Section 152 of the Criminal Code of the Territory of Alaska (Act of March 3, 1899, Title I, c. 429, 30 Stat. 1253, 1275 [Sec. 4982, Compiled Laws of Alaska, 1933]) provides:

"Each and every person who shall deal, play, or carry on, open or cause to be opened, or who shall conduct, either as owner, proprietor or employee, whether for hire or not, any game of faro, monte, roulette, rouge-et-noir, lansquenet, rondo, vingt-un, twenty-one, poker, draw poker, brag, bluff, thaw, craps, or any banking or other game played with cards, dice, or any other device, whether the same shall be played for money, checks, credit, or any other representative of value, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than five hundred dollars, and shall be imprisoned in the county jail until such fine and costs are paid: Provided, That such person so convicted shall be imprisoned one day for every two dollars of such fine and costs: And provided further, That such imprisonment shall not exceed one year."

534

From the language employed in the congressional act it seems reasonably clear that the limitation upon the local legislature was grounded in the apprehension that the territorial legislature, responding to local sentiment, might attempt to repeal or render nugatory the congressional acts relating to gambling, that is to say, that it might undertake wholly or substantially to legalize gambling in the Territory. The territorial act under which appellant was convicted certainly has no such aim, and its enforcement can have no such effect.

Appellant anticipates and answers a possible argument that if the territorial act is held valid, the question of double jeopardy may arise. There is no contention that it has arisen in this case, and it will be time enough to consider it when it does arise.

Reversed.